UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL SHANE FREEMAN,

       Plaintiff,

v.                                       Case No: 6:14-cv-1275-Orl-22JSS

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Michael Freeman, seeks judicial review of the denial of his claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the Court recommends that the decision be reversed and remanded for further consideration.

## BACKGROUND

### A. Procedural Background

Plaintiff previously received SSI based on his disability as a child. (Tr. 15.) However, when Plaintiff reached the age of eighteen, the Commissioner was required to redetermine his eligibility for benefits under the adult standards for disability. (Tr. 15, 17.) On August 11, 2011, it was determined that Plaintiff was no longer disabled as of the first of that month. (Tr. 15, 17.) This determination was upheld upon reconsideration after a disability hearing was held. (Tr. 15.) Plaintiff then requested an administrative hearing. (Tr. 8.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 15.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for

benefits.  (Tr. 15–23.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1–6, 8.)  Plaintiff then timely filed a complaint with this Court. (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Plaintiff, who was born in 1993, received disability benefits as a child beginning in 2002. (Tr. 22.)  Plaintiff attended school through the twelfth grade but was one credit short of receiving a diploma.  (Tr. 38–39.)  Plaintiff has no past relevant work experience.  (Tr. 22.)  Plaintiff alleged disability due to a learning disability.  (Tr. 125.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: obesity, mood disorder, and dependent and schizotypal personality disorder.  (Tr. 17.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17–18.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except he can perform simple, repetitive tasks and is to avoid frequent interactions with the general public.  (Tr. 19.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible.  (Tr. 20.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work.  (Tr. 22.) Given Plaintiff's background and RFC, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy.  (Tr. 22.)  Accordingly, based on

Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff not disabled.  (Tr. 22–23.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A) 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).

A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to apply the correct legal standards at step five of the sequential evaluation process; (2) the ALJ failed to apply the correct legal standards to the opinion of Dr. Marrero; and (3) the ALJ failed to apply

the correct legal standards to the opinion of Dr. Patel.  For the reasons that follow, it is recommended that the Commissioner's decision be reversed and this case be remanded for further proceedings.

### A.  Reliance on the Grids

Plaintiff contends that the ALJ erred by failing to apply the correct legal standards at step five of the sequential evaluation process.  Specifically, Plaintiff argues that the ALJ erred by relying exclusively on the grids to find that Plaintiff was not disabled because a limitation to simple, repetitive tasks and avoidance of frequent interaction with the public would impact the occupational base of light work and, therefore, precludes reliance on the grids.

At step five of the sequential evaluation process, the ALJ must determine whether there are significant numbers of jobs in the national economy that the claimant can perform, given the claimant's RFC, age, education, and work experience.  *Owens v. Comm'r of Soc. Sec.*, 508 F. App'x 881, 883 (11th Cir. 2013) (per curiam).  The Commissioner bears the burden at step five to show the existence of such jobs.  *Id.*  There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy: (1) applying the Medical-Vocational Guidelines, also known as "grids"; or (2) consulting a vocational expert ("VE").  *Phillips v. Barnhart*, 357 F.3d 1232, 1239–40 (11th Cir. 2004).

Exclusive reliance on the grids is not appropriate if either of the following conditions exist: (1) the claimant is unable to perform a full range of work at a given residual functional level; or (2) the claimant has non-exertional impairments that significantly limit basic work skills.  *Id.* at 1242.  Thus, the first condition requires that the ALJ consult a VE when the claimant's exertional limitations prevent the claimant from performing unlimited types of work at the given exertional level.  *Id.*  If the ALJ concludes that the claimant can perform a full range or unlimited types of

work at the given exertional level despite any exertional limitations, then the ALJ must next determine whether the claimant's non-exertional limitations affect the claimant's ability to secure employment at the given work level in the national economy. *Id.* In making this finding, the ALJ must determine whether the claimant's non-exertional limitations significantly limit the claimant's basic work skills—that is, whether the claimant's non-exertional limitations prohibit the claimant from performing "a wide range of work at a given work level." *Id.* at 1243. If the ALJ determines that the claimant's non-exertional limitations do not significantly limit his or her basic work skills at the given work level, then the ALJ may rely on the grids to determine if the claimant is disabled. *Id.* Before relying exclusively on the grids, the ALJ must first make a specific finding that the claimant's non-exertional limitations do not significantly limit his or her basic work skills. The ALJ must state with at least some measure of clarity the grounds for his or her decision so the reviewing court can determine whether the proper legal analysis was conducted. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

Exertional limitations are limitations on a person's ability to meet the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling at the level required by the level of work at issue. 20 C.F.R § 404.1569a(b). Non-exertional limitations affect a person's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. 20 C.F.R § 404.1569a(c). Postural limitations (i.e., stooping, climbing, crawling, crouching, kneeling, and balancing) and environmental limitations (i.e., restrictions that result in inability to tolerate some physical feature of work settings that occur in certain industries or types of work, such as an inability to tolerate dust or fumes) are considered non-exertional limitations. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e).

Ordinarily, when non-exertional limitations are alleged, vocational testimony is used. *See Owens*, 508 F. App'x at 883–84 (stating that "[i]f nonexertional impairments exist, the ALJ may use the Grids as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through VE testimony, of the existence of jobs in the national economy that the claimant can perform"); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (finding that an ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a VE); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (finding that when non-exertional factors, such as depression and medication side effects, have been alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). "It is only when the claimant can clearly do unlimited types of light work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A Mar. 1981)).

**Plaintiff's Ability to Perform the Full Range of Work at the Light Level**

Here, once the ALJ determined that Plaintiff did not have any past relevant work, the burden shifted to the Commissioner to show the existence of jobs in the national economy that Plaintiff could perform, given Plaintiff's impairments. The ALJ concluded that, based on Plaintiff's exertional limitations, Plaintiff retained the RFC to perform light work. (Tr. 19.) Light work is one of the five classifications of jobs in the national economy, each of which is based on its respective physical exertion requirements. 20 C.F.R. 416.967. Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 416.967(b).  In limiting Plaintiff to light work, the ALJ found that Plaintiff's excessive weight may impede Plaintiff's ability to lift and carry more than ten pounds frequently and twenty pounds occasionally.  (Tr. 21).  Aside from this limitation, the ALJ found that Plaintiff does not have significant problems associated with his morbid obesity that prevent him from engaging in physical activity.  Specifically, the ALJ referenced Plaintiff's normal examinations and noted that there were no other findings that prevent Plaintiff from sitting, standing, and walking up to six hours each day in an eight-hour workday or that prevent Plaintiff from performing postural or manipulative activities.  (Tr. 21.)  Therefore, the ALJ properly concluded that Plaintiff retained the ability to perform the full range of light work despite his exertional limitations.

**Plaintiff's Ability to Perform Basic Work Skills at the Light Level**

Next, according to the test set forth above, the ALJ was required to determine whether Plaintiff's non-exertional limitations significantly limit his basic work skills.  That is, the ALJ was required to determine whether Plaintiff's non-exertional limitations preclude a wide range of work at the light-work level.  The ALJ fell short in this regard.

In this case, in Plaintiff's RFC, the ALJ limited Plaintiff to simple, repetitive tasks and avoidance of frequent interactions with the general public, both of which are considered non-exertional limitations.  (Tr. 19).  In making this determination, the ALJ considered Plaintiff's irritability, paranoia, intelligence testing results, and mental impairments.  Specifically, the ALJ

considered Plaintiff's school performance, which indicated that Plaintiff performed well in school despite his learning disability and was only one math credit short of finishing high school (Tr. 19–22); Plaintiff's performance on vocational testing, which indicated that Plaintiff would be able to work optimally under moderately structured and supervised positions and without overwhelming social interaction due to Plaintiff's dependent and schizotypal personality disorder with avoidant and depressive personality traits (Tr. 21); the state agency psychologist's opinion that Plaintiff could perform simple tasks and make work decisions but would have difficulties maintaining attention and concentration for extended periods (Tr. 21); Plaintiff's mental health treatment, which indicated that Plaintiff suffers from dependent and schizotypal personality disorder, depression, irritability, and paranoia and that Plaintiff was doing well on medication and with mental health intervention (Tr. 20–22); and Plaintiff's ability to engage in his daily activities (Tr. 18–22).  In considering Plaintiff's mental impairments, the ALJ found that Plaintiff's mental impairments "impose[d] more than minimal limitations on [Plaintiff's] ability to function."  (Tr. 17.)

After determining Plaintiff's RFC, the ALJ proceeded to step five of the sequential evaluation process.  At step five, the ALJ relied on the grids to determine that Plaintiff is not disabled, explaining:

> Since August 1, 2011, if the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17.  However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework for this rule. According to Social Security Ruling 85-15, some limitations in climbing and balancing are not significant, and kneeling and crawling limitations do not have a significant impact on the broad world of work. Stooping and bending are required occasionally in light work, and crouching is not required in light work (Social Security Ruling 83-14).

(Tr. 22.)  However, this brief explanation only addresses Plaintiff's postural limitations, that is, Plaintiff's ability to perform the wide range of light work notwithstanding his non-exertional postural limitations.  The ALJ failed to address Plaintiff's mental impairments and limitation to repetitive tasks and avoidance of frequent interaction with the public.

The ALJ erred by failing to address whether Plaintiff's non-exertional limitations significantly limit his basic work skills at the light-work level.  Specifically, the ALJ did not address the limitations to repetitive tasks and avoidance of frequent interaction with the public before applying the grids.  Although the ALJ determined that Plaintiff's non-exertional limitations would not significantly erode the occupational base of unskilled light work, he only discussed Plaintiff's postural limitations and did not expressly address whether Plaintiff's non-exertional limitations significantly limit his basic work skills.  *See Johnson v. Colvin*, No. 8:14-CV-0041-T-27TBM, 2015 WL 1423127, at *3 (M.D. Fla. Mar. 27, 2015) (finding that the ALJ failed to address whether the plaintiff's non-exertional limitations significantly limited the plaintiff's basic work skills and that the ALJ's conclusion that the plaintiff's occasional postural limitations "would not significantly erode the occupational base" did not equate to a finding that the plaintiff could perform unlimited types of light work).  The ALJ summarily concluded that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work."  (Tr. 22.)

The ALJ's conclusion that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work" is insufficient on multiple grounds.  First, it fails to address Plaintiff's other limitations, specifically Plaintiff's mental impairments and limitations to repetitive tasks and avoidance of frequent interaction with the general public.  Second, it fails to indicate which limitations the ALJ considered in making this conclusion and, in the same vein, fails to indicate whether the "additional limitations" considered were exertional or non-exertional.

And, lastly, it "lacks sufficient clarity to allow a reviewing court to determine that the proper legal analysis was conducted." *Owens*, 508 F. App'x at 884; *see also Frizzo v. Astrue*, No. 6:11-CV-1318-ORL-31, 2012 WL 3668049, at *13 (M.D. Fla. Aug. 7, 2012), *report and recommendation adopted sub nom.*, *Frizzo v. Comm'r of Soc. Sec.*, No. 6:11-CV-1318-ORL-31, 2012 WL 3651057 (M.D. Fla. Aug. 24, 2012) (finding that the ALJ's determination that the plaintiff's non-exertional limitations had "little or no effect on the occupational base for unskilled light work" was not supported by substantial evidence because the ALJ did not offer a specific explanation for his finding that there was no erosion of the occupational base due to the plaintiff's mental impairments).

Moreover, a finding that Plaintiff's "additional limitations" do not significantly erode the occupational base does not equate to a finding that Plaintiff is able to perform unlimited unskilled light work, nor are those findings interchangeable or synonymous with one another. *See Allen*, 880 F.2d at 1201 (finding that "[e]ven a mild mental impairment may prevent a claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies"). Absent a specific finding that Plaintiff is able to perform unlimited unskilled light work, and an explanation of how the ALJ reached such a finding, exclusive reliance on the grids was error. *See Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987) (finding that the ALJ's failure to make a specific finding as to whether a non-exertional impairment was severe enough to prelude claimant from performing a wide range of sedentary work precluded exclusive reliance on the grids).

The ALJ also erred by failing to explain whether a limitation to repetitive tasks and avoidance of frequent interactions with the general public would preclude a wide range of work at the light level. The ALJ's limitations of Plaintiff to repetitive tasks and to avoid frequent

interaction with the general public are both non-exertional limitations that are not encompassed within the meaning of unskilled work. *Morgan v. Comm'r of Soc. Sec.*, No. 6:14-CV-1037-ORL-GJK, 2015 WL 5178410, at *2 (M.D. Fla. Sept. 4, 2015). The grids take administrative notice of the number of unskilled jobs at the various functional levels that exist throughout the national economy. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b); *see also Jordan v. Comm'r of Soc. Sec.*, 470 F. App'x 766, 770 (11th Cir. 2011) (stating that all of the jobs listed in the grids are unskilled). Unskilled work is work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). Therefore, the definition of unskilled work encompasses simple tasks. On the other hand, a limitation to repetitive tasks is not contained within the definition of unskilled work. 20 C.F.R. § 416.968(a); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 878 (11th Cir. 2006) (per curiam).

If the ALJ includes a limitation to repetitive tasks, then the ALJ must determine whether such a limitation precludes the claimant from performing a wide range of work at a given level. *See Vuxta*, 194 F. App'x at 878 (stating that "[i]f the ALJ determined that a limitation to repetitive tasks did not preclude [the plaintiff] from performing a wide range of work at a given level, then a disability determination relying exclusively on the grids was appropriate"). Similarly, a limitation to avoid frequent interaction with the general public is not included in the definition of unskilled work. *See Coffin v. Comm'r of Soc. Sec.*, No. 6:09-CV-2061-ORL-DAB, 2011 WL 806674, at *8-9 (M.D. Fla. Mar. 2, 2011) (concluding that the ALJ should not have found that a restriction to unskilled work sufficiently accounted for the limitation of contact with the public, coworkers, and supervisors and remanding so ALJ could provide some explanation as to whether limitations to routine and repetitive tasks and in social functioning preclude a wide range of light work); *D'Anna v. Comm'r of Soc. Sec.*, No. 608-CV-1640-ORL-DAB, 2009 WL 5214998, at *7

(M.D. Fla. Dec. 30, 2009) (finding that the ALJ erred by relying exclusively on the grids when the plaintiff was limited to work that is not in close proximity to co-workers or the general public).

In light of the above, the Court finds that the ALJ erred by failing to address whether Plaintiff's non-exertional limitations significantly limit Plaintiff's basic work skills at the light-work level and by failing to provide an explanation or analysis as to whether a limitation to repetitive tasks and avoidance of frequent interactions with the general public, which are not included in the definition of "unskilled" work, would preclude a wide range of work at the light level. Therefore, on remand, the ALJ must consider whether Plaintiff's additional non-exertional limitations would significantly limit his basic work skills at the light level and whether a limitation to repetitive tasks and avoidance of frequent interactions with the general public would preclude a wide range of work at the light level. If the ALJ finds that Plaintiff's additional limitations do, in fact, significantly limit his basic work skills, then the ALJ must consult a vocational expert to determine whether there are sufficient jobs at the light work level within the national economy that Plaintiff can perform.

### B.  Medical Opinion of Dr. Marrero

Plaintiff contends that the ALJ erred by failing to apply the correct legal standards to the opinion of Dr. Marrero. Specifically, Plaintiff argues that the ALJ erred by failing to assign a weight to the opinion of Dr. Marrero and by failing to account for Dr. Marrero's opinion in the RFC.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927.

In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted).  Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips*, 357 F.3d at 1240–41.  In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).

In this instance, Dr. K. Marrero performed a vocational rehabilitation evaluation on Plaintiff in June 2011 upon referral by the Department of Vocational Rehabilitation.  (Tr. 221.)  Dr. Marrero administered the following tests: Wechsler Adult Intelligence Scale—Fourth Edition ("WAIS-IV"), Wechsler Individual Achievement Test—Third Edition ("WIAT-III"), and Millon Clinical Multiaxial Inventory III ("MCM-III").  (Tr. 18, 220–221.)  In regard to activities of daily living, Dr. Marrero found that Plaintiff took care of his personal needs without assistance, watched television, researched information on the Internet and used the computer, played video games, enjoyed reading and music, and cooked and cleaned independently.  (Tr. 221.)  Dr. Marrero also found that the test results indicated that Plaintiff functioned within the low average range with a Full Scale IQ of 85 and yielded average composite scores with the exception of math, which fell in the below average range; no indication of a learning disorder; and a dependent and schizotypal personality disorder, with avoidant and depressive personality traits.  (Tr. 224).  Based on

Plaintiff's test results, Dr. Marrero opined that Plaintiff would work optimally under moderately structured and supervised positions. (Tr. 224.) Dr. Marrero further opined that Plaintiff's performance would likely suffer under moderate levels of stress and recommended that the Department of Vocational Rehabilitation assist Plaintiff in gaining employment where he will not be overwhelmed by social interactions with others. (Tr. 224.)

Plaintiff does not deny that the ALJ referred to and discussed Dr. Marrero's evaluation in his decision. Plaintiff also does not provide any explanation for how stating the weight given to Dr. Marrero would have changed the result or offer any argument as to why the ALJ should or should not have given Dr. Marrero's opinion more or less weight. Upon review of the ALJ's decision, it is clear that the ALJ relied upon and credited Dr. Marrero's evaluation to render his opinion and that Dr. Marrero's opinions did not contradict the ALJ's findings regarding Plaintiff's moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 18.) Dr. Marrero's opinion is summarized and credited substantially throughout the ALJ's decision. (Tr. 18, 21–22.) Specifically, the ALJ cited Dr. Marrero's opinion regarding Plaintiff's ability to adequately perform activities of daily living and found it consistent with Plaintiff's testimony that he was able to complete household chores, take public transportation, make purchases at a store if necessary, and seek employment. (Tr. 18.) Based on Dr. Marrero's opinion and Plaintiff's testimony, the ALJ found that Plaintiff had only mild restrictions in activities of daily living. (Tr. 18.) The ALJ also credited Dr. Marrero's opinion regarding Plaintiff's mental test results in finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 18.) Importantly, the ALJ described the results of Plaintiff's personality testing performed by Dr. Marrero and accounted for such results

and Dr. Marrero's recommendation regarding limited social interaction by limiting Plaintiff to simple, repetitive tasks that do not require frequent interaction with the public.  (Tr. 21.)

In this instance, the ALJ's failure to explicitly articulate the weight afforded to Dr. Marrero's opinion does not warrant remand because it is clear that the ALJ properly considered such opinion, did not discount the opinion or findings in any way, and the opinion and findings were consistent with the ALJ's findings.  *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).  Therefore, any failure to state the weight given to Dr. Marrero was harmless.

### C.  Medical Opinion of Dr. Patel

Plaintiff contends that the ALJ erred by failing to apply the correct legal standards to the opinion of Dr. Patel.  Specifically, Plaintiff argues that the ALJ erred by ignoring Dr. Patel's opinion regarding Plaintiff's environmental limitations.

In November 2011, Dr. S. Patel, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment ("PRFC") of Plaintiff.  (Tr. 21, 325–332.)  Dr. Patel opined that Plaintiff was capable of performing light work, except he could only occasionally climb ladders, ropes, or scaffolds.  (Tr. 327.)  Dr. Patel further found that Plaintiff needed to avoid concentrated exposure to extreme heat and cold, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.  (Tr. 329.)  These are environmental limitations, which are considered non-exertional limitations.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)).

In determining Plaintiff's RFC, the ALJ concluded that Plaintiff had the RFC to "perform light work as defined in 20 C.F.R. 416.967(b) except he can perform simple, repetitive tasks and he is to avoid frequent interactions with the general public."  (Tr. 19.)  In his decision, the ALJ

accorded substantial weight to Dr. Patel's opinion in his PRFC form.  (Tr. 21.)  Specifically, the ALJ noted that Dr. Patel's finding regarding Plaintiff's ability to perform light work with occasional climbing of ladders, ropes, and scaffolds was supported by the physician progress notes indicating that Plaintiff is morbidly obese.  (Tr. 21.)  However, despite according substantial weight to Dr. Patel's assessment, the ALJ said nothing about the rest of Dr. Patel's assessment, which included Dr. Patel's opinion regarding Plaintiff's environmental limitations.  The ALJ did not include the environmental limitations in Plaintiff's RFC and offered no rationale for their exclusion.

State agency medical consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence in the record. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2).  Although an ALJ is not required to discuss every piece of record evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam), an ALJ cannot pick and choose which evidence supports his or her decision while disregarding evidence to the contrary.  *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (concluding that the ALJ's decision was not supported by substantial evidence when the ALJ focused on one aspect of the evidence while disregarding contrary evidence); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985) (providing that the ALJ's failure to mention or consider contrary medical records, let alone articulate reasons for disregarding them, is reversible error).  Further, the ALJ must "state with at least some measure of clarity the grounds for his decision" so that the Court can determine whether the ALJ had substantial justification for his finding.  *Owens*, 748 F.2d at 1516.  Without an explanation of the weight accorded to each item of evidence and an explanation of the reason for the ALJ's decision, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of

the claim is rational and supported by substantial evidence  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

While it is possible to infer that the ALJ rejected Dr. Patel's opinion, as the Commissioner contends, the ALJ did not express such a conclusion or otherwise indicate that any evidence conflicted with Dr. Patel's opinion or PRFC assessment.  Likewise, it is plausible to deduce that Plaintiff is not limited by the environmental restrictions included in Dr. Patel's opinion because the record does not indicate that Plaintiff suffered from any respiratory issues, chest pain, shortness of breath, exertional discomfort, nausea, or other conditions that would make such limitations necessary or reasonable.  (Tr. 332.)  *See Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (finding that an ALJ clearly does not err in giving opinions of non-examining physicians significant weight when they do not conflict with those of examining sources).  However, it is not within the province of the Court to make such a determination when the ALJ did not proffer an explanation for his decision to exclude those limitations from the RFC.  *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 732–33 (11th Cir. 2011) (finding that "[w]ithout a clear explanation of the ALJ's treatment of [the doctor's opinion, [the court] cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence" and "when the ALJ fails to state with sufficient clarity the grounds for his evidentiary decisions, [the court] will not affirm simply because some rationale might have supported the ALJ's conclusion, and instead remand for further findings at the administrative hearing level") (internal quotations and citations omitted).

This is especially concerning where, as here, the ALJ gave substantial weight to Dr. Patel's opinion without particular reference to any portion of it and without expressly stating whether—

or why—some portions or findings would be adopted or whether some, none, or all of his findings were supported by the entire medical record.  Indeed, the ALJ's decision merely provides that:

> As for the opinion evidence, the undersigned accords substantial weight to the state agency medical consultant, who found that the claimant is capable of performing light work with occasional climbing of ladders, ropes and scaffolds (Ex. 4F) as this assessment is supported by the physician progress notes, which indicate that claimant is morbidly obese.

In light of this, the Court is unable to determine whether the ALJ's decision to exclude the environmental limitations from the RFC is supported by substantial evidence or determine how the decision was made, as the ALJ supplied no explanation for the Court to consider.  *See Baker v. Comm'r of Soc. Sec.*, 384 Fed. App'x 893, 896 (11th Cir. 2010) (stating that "a court may not accept appellate counsel's *post hoc* rationalizations for agency actions"); *Owens*, 748 F.2d at 1514–15 (stating that a "clear articulation of both fact and law is essential to [the court's] ability to conduct a review that is both limited and meaningful").  Doing so would be akin to the Court injecting its own assumptions for the ALJ's conclusion when the decision itself is silent as to the ALJ's reasoning for a particular finding.  *See Owens*, 748 F.2d at 1515 (declining to affirm "simply because some rationale might have supported the ALJ's conclusion").

In short, the ALJ provided no explanation to support his treatment of Dr. Patel's opinion in according substantial weight to Dr. Patel's opinion and adopting some of Dr. Patel's restrictions while inexplicably excluding others.  Based on this, the Court is unable to determine whether the ALJ's conclusions were rational and supported by substantial evidence.  The Court finds that the ALJ should have explained why he rejected the environmental restrictions included in Dr. Patel's assessment while expressly adopting the others.  In accordance with the findings above, if the ALJ reconsiders his decision regarding the exclusion of Plaintiff's environmental limitations, then he must also explain whether those limitations significantly affect Plaintiff's basic work skills.  The

Court therefore remands so that the ALJ can explicitly consider and explain the weight accorded to Dr. Patel's opinion regarding Plaintiff's environmental limitations.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **REVERSED** and the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the recommendations set forth above.

2. The Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

**IT IS SO REPORTED** in Tampa, Florida, on September 28, 2015.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Anne C. Conway
Counsel of Record